# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| ESAU ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:12-CV-108-TLS |
| | ) | |
| LAKE MINNEHAHA | ) | |
| OWNER'S ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion to Partially Dismiss Plaintiff's

Complaint [ECF No. 9]. For the following reasons, the Court grants in part and renders moot in

part the Defendant's Motion.

## BACKGROUND

On August 8, 2011, the Plaintiff, Esau Robinson, filed a Charge of Discrimination with

the Gary Human Rights Commission (GHRC) and the Equal Employment Opportunity

Commission (EEOC) against the Defendant, Lake Minnehaha Owner's Association. The

Plaintiff marked the box for race discrimination as the basis for his Charge and included the

following particulars:

> I am an African American who was hired by the Respondent on June 5, 2005. My
> recent position was in Maintenance and I was the only black employee in
> maintenance. In January 2011, I was denied terms and conditions of employment
> afforded to respondent's white employees when my hours were reduced from 40 to
> 30 hrs a week. Around or about March or April 2011, Respondent hired a white male
> and gave him a (40/hr) week, after telling me they had to reduce my hours due to
> over budgeting the maintenance salary. The last act occurred July 28, 2011, when I
> was terminated by the Respondent's white Manager, Alan Hartford, at the direction
> of one of the white Board Members, because I was unable to work the evening shift.

I believe that I have been discriminated against based on my race/black in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Pl.'s Compl. Ex. A, ECF No. 1.)[1]

On December 13, 2011, the EEOC issued the Plaintiff a Dismissal and Notice of Rights. (*Id.* Ex. B.) On March 12, 2012, the Plaintiff filed his Complaint against the Defendant "pursuant to Title VII of the Civil Rights Act of 1964 ('Title VII'), 42 U.S.C. § 2000e, 42 U.S.C. § 1981 and relevant state law." (*Id.* ¶ 5.) In paragraphs 10–13 of the Complaint, the Plaintiff sets forth facts that he considers relevant to all counts. He alleges that he was employed by the Defendant in the maintenance department and that, during his employment, the Defendant subjected him to different terms and conditions than it afforded to white employees. (*Id.* ¶¶ 10, 11.)

> More specifically, Defendant reduced the number of hours Defendant would pay Plaintiff for working from 40 hours per week to 30 hours per week and Defendant continued to call to Plaintiff to work for more hours per week than Defendant would pay Plaintiff for working. Defendant allowed White employees in the same department to work and receive pay for 40 hours per week. Defendant's actions were based on Plaintiff's race.

(*Id.* ¶ 12.) In paragraph 13, the Plaintiff alleges that the Defendant subjected him "to a hostile work environment and to terms and conditions of employment not required of white employees." (*Id.* ¶ 13.) The factual predicate for the allegation in paragraph 13 is that the "Defendant attempted to move Plaintiff to work the evening shift and terminated his employment when Plaintiff was unable to work this shift" and did so "based on racial discrimination." (*Id.*)

In Count I of the Complaint, the Plaintiff alleges that the Defendant violated Title VII by engaging in a "continuous, repetitious and degenerative cycle and pattern of racial discrimination

---

[1] The Court can consider the content of the EEOC Charges without converting the Defendant's Motion to a motion for summary judgment because the EEOC Charges are attached to the Complaint and are part of the pleadings. Fed. R. Civ. P. 10(c); Fed. R. Civ. P. 12(d).

and retaliation." (*Id.* ¶ 14.) In Count II, the Plaintiff alleges that the Defendant intentionally or recklessly inflicted severe and prolonged emotional distress upon the Plaintiff, and that the Defendant's "conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was atrocious and was utterly intolerable in a work setting." (*Id.* ¶¶ 18, 19.) Finally, in Count III, the Plaintiff alleges that the "Defendant's conduct was negligent in its actions toward Plaintiff and breached its duty of care owed to Plaintiff" which resulted in "physical, emotional, personal, psychological, familial distress and the loss of future and past earnings and employment benefits." (*Id.* ¶¶ 21, 22.)

On August 1, 2012, the Defendant filed a Motion to Partially Dismiss Plaintiff's Complaint [ECF No. 9], directed at the Plaintiff's claims for harassment, retaliation, and unpaid wages on grounds that they were not within the scope of the Plaintiff's Charge of Discrimination nor supported by the facts set forth in the Complaint. The Defendant contends that the Plaintiff's Title VII claims should be limited to the discrimination claims he brought in his Charge. Additionally, the Defendant argues that the Plaintiff's state law tort claims should be dismissed for failure to state a claim upon which relief can be granted.

The Plaintiff responded to the Defendant's Motion [ECF No. 13], arguing that he sufficiently asserted a claim for hostile work environment harassment, both in his Complaint and in his Charge of Discrimination. With respect to the Defendant's challenges to the claims for retaliation and unpaid wages, the Plaintiff clarifies that he never intended to assert them as independent claims or theories of recovery. With respect to the state law claims, the Plaintiff argues that his Complaint sufficiently pleads causes of action for negligent and intentional infliction of emotional distress.

The Defendant filed a Reply [ECF No. 14], and this matter is ripe for the Court's consideration.

**ANALYSIS**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, at 678; *Appert*, 673 F.3d at 622. The Seventh Circuit has provided the following summary

of the lessons to be learned from *Twombly* and *Iqbal* with respect to notice pleading and the Rule

12(b)(6) standard:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must
> accept a plaintiff's factual allegations as true, but some factual allegations will be so
> sketchy or implausible that they fail to provide sufficient notice to defendants of the
> plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts
> should not accept as adequate abstract recitations of the elements of a cause of action
> or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). As long as a complaint invokes a recognized

legal theory and contains plausible allegations on material issues, it cannot be dismissed under

Rule 12. *Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012).

As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not

included in the EEOC charge. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011);

*Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). Nevertheless, a Title VII

plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis

of each claim in his complaint. *Cheek*, 31 F.3d at 500. Rather, Title VII claims set forth in a

complaint are cognizable if there is a reasonable relationship between the allegations in the

charge and the claims in the complaint, and the claim in the complaint can reasonably be

expected to grow out of an EEOC investigation of the allegations in the charge. *Id.* (citing

*Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)); *Cheek v.*

*Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). Claims are not alike or reasonably related

unless there is a factual relationship between them. *Cheek*, 31 F.3d at 501. "This means that the

EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the

*same individuals*." *Id.* (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).

**A.       Hostile Work Environment Claim**

The Defendant has moved to dismiss the Plaintiff's claim that he was subjected to harassment on the basis of his race. The Plaintiff's response to the Defendant's Motion suggests that he intends to rely on the same facts that he asserted in support of his discrimination claim as the support for his hostile work environment claim. Specifically, he maintains that his pleading alleges that the Defendant (1) reduced his hours despite hiring an employee of a different race at full time; (2) called the Plaintiff in to work even though he would not be paid for additional work; (3) terminated his employment when he would not accept an evening shift; and (4) "maintained an environment of discrimination and harassment against Plaintiff due to his race and afforded white employees benefits and privileges not afforded to Plaintiff." (Mem. in Supp. 3–4, ECF No. 13.) The Court will examine whether these allegations state a plausible claim that the Defendant subjected the Plaintiff to a racially hostile work environment.

That the Defendant "maintained an environment of discrimination and harassment . . . due to his race," or "subject[ed] the Plaintiff to a hostile work environment" (Compl. ¶ 13), are legal conclusions, and legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 679–80 (stating that conclusory allegations are not entitled to be assumed true); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (noting that "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion"). Likewise, the Plaintiff's claims concerning a continuing pattern of "racial discrimination and retaliation . . . which the Defendant condoned and ratified, took no action to stop, and performed wilfully or wantonly" (Compl. ¶ 14), contribute nothing to the plausibility analysis under *Twombly/Iqbal*.

*See Iqbal*, 556 U.S. at 680–81 (allegations the petitioners "knew of, condoned, and willfully and maliciously agreed to subject him" to harsh conditions of confinement "as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest" and that certain defendants were the "principal architect" or "instrumental" in adopting and executing it were bare assertions that were not entitled to an assumption of truth (brackets and citations omitted)).

The specific factual allegations the Plaintiff provides in his Complaint relate solely to his hours of work and his termination for failure to work the evening shift. As these are the same matters he addressed in his EEOC Charge, it is not necessary to compare the allegations in the EEOC Charge to the allegations in the Complaint and determine whether there is a reasonable relationship between those allegations. The Defendants do not dispute that these allegations sufficiently set forth a claim for discrimination based on race. However, in Count I of his Complaint, the Plaintiff appears to combine his discrimination claim with a harassment claim, without any attempt to distinguish the two kinds of claims and the types of actions and behavior that lend support to each claim. A discrete act of discrimination, such as a termination, failure to promote or hire, denial of transfer, etc., "forms 'a separate actionable unlawful employment practice.'" *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (additional quotation marks omitted). Hostile work environment claims are different from disparate treatment claims because the issue is not whether particular acts constitute employment discrimination or retaliation, but whether the overall environment in which a plaintiff worked was illegally and racially hostile. *Cf. Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) ("Normally, retaliation, sex

discrimination, and sexual harassment charges are not 'like or reasonably related' to one another

to permit an EEOC charge of one type of wrong to support a subsequent civil suit for another.").

Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation,

ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S.

17, 21 (1993) (quotation marks and citations omitted). Such a claim requires a plaintiff to present

evidence of an environment that he personally found to be pervasive, racially hostile and

abusive, and also, evidence of an environment that would objectively be considered so. *Faragher*

*v. City of Boca Raton*, 524 U.S. 775, 787 (1998). The assertions in the Complaint do not suggest

that the Plaintiff's work environment included discriminatory intimidation, ridicule, or insult that

was so severe and pervasive that it altered the conditions of his employment. Rather, they

suggest that he was discriminated against on the basis of his race when the Defendant applied

disparate terms and conditions of employment with respect to the assignment of work hours. The

Complaint fails to plead sufficient factual matter, accepted as true, to state a claim for racial

harassment that is plausible on its face, and the Court will grant the Defendant's Motion with

respect to this claim.


## B.     Wage Claim

The Defendant construes one of the Plaintiff's allegations as an attempt to assert a claim

for unpaid wages, and argues that such a claim is outside the scope of the EEOC Charge. The

Plaintiff responds that he was not intending to make out a wage claim when he alleged that the

Defendant asked him to work hours for which he would not be paid. The Court agrees that a fair

reading of the Complaint does not suggest that the Plaintiff intended to assert a claim for unpaid

wages. Indeed, the Plaintiff does not even allege that the Defendant failed to pay him wages that

were due to him for time that he actually worked. The allegation is consistent with his claim that

he was treated differently than white employees, i.e, discriminated against on the basis of his

race. Accordingly, the request to dismiss the wage claim is moot.

## C.       Retaliation Claim

The Defendant also requests that the Court dismiss the Plaintiff's retaliation claim. As

with the wage claim, the Plaintiff states that his sole reference to "retaliation" in the Complaint

was not intended "to encompass a claim for retaliation [as] a legal theory allowed under Title VII

or under 42 U.S.C. § 1981. As such, there is no need to dismiss any such claim as one was not

asserted." (Mem. in Supp. 9.) With this representation, and upon review of the Complaint, the

Court agrees that the Plaintiff has not asserted a claim for retaliation. However, retaliation and

discrimination claims are unrelated, *see O'Rourke v. Cont'l Cas. Co.*, 983 F.2d 94, 97 (7th Cir.

1993), and the Complaint's incorporation of the phrase "continuous, repetitious and degenerative

cycle and pattern of racial discrimination *and retaliation*," Compl. ¶ 14 (emphasis added),

creates ambiguity. Therefore, the Court will grant the Defendant's request to dismiss any claim

for retaliation so that the record is clear.

## D.     Intentional Infliction of Emotional Distress

Indiana courts recognize the tort of intentional infliction of emotional distress. *Cullison v.*

*Medley*, 570 N.E.2d 27, 31 (Ind. 1991). "Intentional infliction of emotional distress is committed

by 'one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another.'" *Ledbetter v. Ross*, 725 N.E.2d 120, 123 (Ind. Ct. App. 2000) (quoting *Cullison*, 570 N.E.2d at 31). "It is the intent to harm one emotionally that constitutes the basis for the tort of an intentional infliction of emotional distress." *Cullison*, 570 N.E.2d at 31; *see also Baker v. Westinghouse Elec. Corp.*, 637 N.E.2d 1271, 1275 (Ind. 1994) (stating that in the employment context, the plaintiff must establish that the employer acted with a deliberate intent to inflict an injury or had actual knowledge that an injury was certain to occur). The Indiana Court of Appeals has cited to the Restatement as follows:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Bradley v. Hall*, 720 N.E.2d 747, 752–53 (Ind. Ct. App. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). The tort is found "where conduct exceeds all bounds typically tolerated by a decent society and causes mental distress of a very serious kind." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (citing *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009)).

In Count II of his Complaint, the Plaintiff alleges that the Defendant "intentionally and/or recklessly inflicted severe and prolonged emotional distress upon the Plaintiff" (Compl. ¶ 18) when it engaged in "conduct . . . so extreme and outrageous as to go beyond all possible bounds

of decency" (*id.* ¶ 19). These allegations are "abstract recitations of the elements of a cause of action" and "conclusory legal statements" that a court cannot accept to determine if a claim has been stated. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). To survive a motion to dismiss, these legal conclusions must be grounded in a "sufficiently plausible factual basis." *Id.* at 582. The facts the Plaintiff relies on in support of this claim are the same facts he asserted in support of his discrimination claim, specifically related to work hours, changing the Plaintiff's shift to the evening shift, and terminating his employment when he could not work the evening shift. The Defendant argues that these allegations do not meet the rigorous requirements of a claim for intentional infliction of emotional distress because they do not describe extreme or outrageous conduct.

The plausibility standard calls for a "context-specific" inquiry in which the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Although loss of employment causes hardship, often severe, it is not an uncommon event, even when based on unlawful and improper motives. The facts alleged by the Plaintiff are not sufficient to support a claim that the Defendant's conduct was so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized society. As another district court noted in consideration of the tort of intentional infliction of emotional distress in a case where the plaintiff alleged that the defendant replaced her with a man while she was on maternity leave and offered her lesser positions upon her return:

> There is little doubt that the alleged discrimination must have caused Jaskowski concern and distress. However, while we certainly do not condone conduct such as that alleged here, we cannot say that it amounts to behavior beyond all possible bounds of decency and which a reasonable person could not be expected to endure. *See, e.g., Stoecklein v. Illinois Tool Works, Inc.*, 589 F. Supp. 139, 146 (N.D. Ill. 1984) (allegations that employer unlawfully demoted and forced plaintiff to retire

11

due to age and then reneged on promise to provide severance pay and job counselling did not establish extreme and outrageous conduct) *citing Witkowski v. St. Anne's Hospital of Chicago*, 447 N.E.2d 1016,(1st Dist. 1983) (allegations that employer wrongfully discharged plaintiff to prevent her from securing long-term disability benefits held not extreme and outrageous enough to state claim). *See also Pelizza v. Reader's Digest Sales and Services, Inc.*, 624 F. Supp. 806, 811 (N.D. Ill. 1985) (plaintiff failed to allege extreme and outrageous conduct when he alleged that employer fired him without just cause and in violation of his employment contract).

*Jaskowski v. Rodman & Renshaw, Inc.*, 813 F. Supp. 1359, 1363 (N.D. Ill. 1993) (additional citations omitted).[2] *See also Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598, 601 (7th Cir. 2000) (noting that an employer's act of refusing to allow the plaintiff to work overtime and denying his bid to move to a new position did not meet the standard for extreme and outrageous conduct set forth by comments to § 46 of the Restatement). The Court does not find the allegations of the Plaintiff's Complaint, even when viewed in the light most favorable to the Plaintiff, to state a plausible claim for intentional infliction of emotion distress. Accordingly, the Court will dismiss Count II of the Plaintiff's Complaint.

## C.     Negligent Infliction of Emotional Distress

In Count III of his Complaint, the Plaintiff alleges that the Defendant "was negligent in its actions toward Plaintiff and breached its duty of care owed to Plaintiff" and that, as a result, he has suffered physical, emotional, and other distress and loss of earning. (Compl. ¶¶ 21–22.) The Plaintiff's claim is based on the same set of operative facts that support his Title VII race discrimination claim.

"The right to seek damages for emotional distress in actions for negligence often referred

---

[2] Illinois, like Indiana, follows the Restatement definition for the tort of intentional infliction of emotional distress. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

to as actions for negligent infliction of emotional distress, is carefully circumscribed under

Indiana jurisprudence." *Spangler v. Bechtel*, 958 N.E.2d 458, 466 (Ind. 2011). According to the

Indiana Supreme Court, Indiana does not permit "an action seeking damages for emotional

distress predicated upon a breach of an alleged duty not to inflict emotional injury on another.

Such independent, stand-alone actions for negligent infliction of emotional distress are not

cognizable in Indiana." *Id.* Instead, under any of the scenarios that can constitute negligent

infliction of emotional distress, "the defendant's negligence in breaching a legal duty is a

required predicate." *Id.* The *Spangler* court also clarified that actions seeking damages for

emotional distress resulting from the negligence of another are permitted in only two limited

situations. In the first, known as the "bystander rule," the plaintiff has witnessed or has come to

the scene soon after the death or severe injury of a relative. 958 N.E.2d at 466. The Plaintiff's

Complaint does not suggest that the Plaintiff witnessed the death or severe injury of a relative as

a result of the Defendant's negligence, so the bystander rule is not applicable.

The second permissible factual basis for a negligent infliction of emotional distress claim

is where the plaintiff has suffered a direct impact; this is also known as the "modified impact

rule." *Id.* This rule requires a direct physical impact from the plaintiff's direct involvement in the

defendant's negligent conduct. *Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 996–97 (Ind. 2006);

*Ross v. Cheema*, 716 N.E.2d 435, 437 (Ind. 1999) (holding that for purposes of the modified

impact rule, the nature of impact must be physical). The impact need not constitute an "injury,"

but it must be a physical impact nonetheless. *Cook*, 857 N.E.2d at 997. Here, the Plaintiff has

alleged no direct physical impact resulting from the Defendant's actions. Nor can any direct

physical impact be reasonably inferred from the allegations in the Complaint. Accordingly, the

Court will dismiss the Plaintiff's negligent infliction of emotional distress claim.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and RENDERS MOOT IN PART the Defendant's Motion to Partially Dismiss Plaintiff's Complaint [ECF No. 9]. The following claims are dismissed: the Title VII hostile work environment and retaliation claims (embedded in Count I); the intentional infliction of emotion distress claim (Count II); and the negligent infliction of emotional distress claim (Count III). The Plaintiff's Title VII discrimination claim (Count I) remains pending.

SO ORDERED on December 12, 2012.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION